AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Colorado

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>IN THE MATTER OF THE SEARCH OF A<br>SILVER LG SMARTPHONE, HELD IN<br>EVIDENCE AND ASSOCIATED WITH DEA DFD<br>EXHIBIT #N-10, CURRENTLY STORED IN THE<br>DEA DFD NON-DRUG EVIDENCE VAULT. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.   18-sw-05259-STV |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the _____State and_____ District of _____Colorado_____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution and Possession with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 846 | Conspiracy to Distribute and Possession with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 843(b) | Unlawful Use of a Communication Facility |

The application is based on these facts:

X  Continued on the attached affidavit, which is incorporated by reference.
☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/Christopher Hodorowicz*
_____
*Applicant's signature*

Christopher Hodorowicz, Special Agent, DEA
_____
*Printed name and title*

Sworn to before me and:  ☐ signed in my presence.
                          ☒ submitted, attested to, and acknowledged by reliable electronic means.

Date:   March 7, 2018
_____
*Judge's signature*

City and state:   Denver, CO

Scott T. Varholak, U.S. Magistrate Judge
_____
*Printed name and title*

**ATTACHMENT A**

**<u>DESCRIPTION OF LOCATION TO BE SEARCHED</u>**

The SUBJECT DEVICE is a silver LG SMARTPHONE cellular phone bearing, unknown telephone number, Model:LGMS210, FCC ID: ZNFM210, Serial Number:712CYBD260925, IMEI:353341-09-260925, which was seized from Jesus Antonio GARCIA-MARTINEZ. The SUBJECT DEVICE is identified as DEA Exhibit N-10 in this investigation.



# ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

On the SUBJECT DEVICE described in Attachment A, the following items, that constitute evidence of the commission of criminal offense(s); contraband, the fruits of crimes, and things otherwise criminally possessed; and property designed or intended for use or which is or has been used as the means of committing criminal offense(s), namely, violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

1. Lists of narcotics customers, either specifically enumerated or in coded language, and related identifying information;

2. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

3. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

4. Any information regarding the schedule or travel of Jesus Antonio GARCIA-MARTINEZ, and any other member of this conspiracy;

5. All bank records, checks, credit card bills, account information, and other financial records;

6. Stored names, telephone numbers (including numbers from outgoing, incoming, and missed call lists) and e-mail addresses; contact lists; records of telephone calls; and any other part of the electronic memory of the telephone which contains information relating to the Subject Offenses;

7. Address book information;

8. Stored voice mail, text, and e-mail messages relating to the Subject Offenses;

9. Photographs and video of associates, property, or other items related to the Subject Offenses, including any and all embedded data within those items;

10. Any stored information reflecting communications regarding illegal activities among and between members and associates involved in the Subject Offenses;

11. All numeric and digital information contained within the SUBJECT DEVICE that identifies the telephone's electronic signature, commonly referred to as the International Mobile Subscriber Identification (IMSI) or Electronic Serial Number (ESN);

12. To the extent that the SUBJECT DEVICE can access and store electronic files generated by computers, agents will also search for

a) Electronically-stored documents and records listing or displaying physical and electronic addresses used for sending or receiving mail, to include e-mail contact lists;

b) Any and all records and materials, in any format and media (including, but not limited to stored text or PDF documents, e-mail, chat logs and electronic messages), pertaining to the Subject Offenses and the disbursement and/or concealment of payment and proceeds associated therewith;

c) Stored documentation evidencing use or ownership of the device, and stored documentation evidencing ownership of the personal chattel described herein, including, but not limited to: stored utility, internet and telephone bill payment information, records of payment for access to newsgroups or other online subscription services, user IDs, passwords, user accounts, stored product registration information, banking information (to include electronic bill pay accounts) and correspondence;

d) Any and all records, in any format, relating to or showing use of any peer to peer network, to include postings on You-Tube and related social networking pages pertinent to the Subject Offenses;

13. Evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

14. Evidence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software; or evidence of the lack of such malicious software; and

15. Evidence of the connection of the device to other electronic media. All third party applications installed or previously installed on the device, including, but not limited to WhatsApp, Facebook, Signal, Instagram, Snapchat, and any other application which may contain evidence of the Subject Offenses.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

## INTRODUCTION

Your affiant, CHRISTOPHER HODOROWICZ, a Special Agent (S/A) with Enforcement Group 1, Denver, Colorado, being duly sworn, states as follows:  Your affiant is an "investigative or law enforcement officer" within the meaning of Section 2510 (7) of Title 18, United States Code, and is authorized by law to conduct investigations and make arrests for offenses in Title 18, United States Code, Section 2516.  Your affiant is a "Federal law enforcement officer" within the meaning of Fed.R.Crim.P. 41(a)(2)(C) and (b).

1.  I am a DEA Special Agent and have been so employed since April, 2016. I have been assigned to the DEA Denver, Colorado Field Division Office and Enforcement Group 1, since May, 2017. I have completed DEA's 18-week Basic Agent Training Course at the DEA Academy in Quantico, Virginia, which included training on surveillance and undercover techniques, tactical operations, confidential source management, probable cause from sources, interview and interrogation, drug identification, drug field testing, clandestine laboratories and hazardous materials, asset forfeiture law, controlled substances law, search and seizure law, drug conspiracy law, electronic surveillance law, money laundering and bulk currency law, and extraterritorial law. During my tenure with DEA, I have assisted in investigations that targeted suppliers, buyers, and couriers of narcotics.  I have also participated in surveillance operations and purchased narcotics while acting in an undercover capacity, both of which have educated me in the methods of operation of drug trafficking organizations.

2.    I have spoken with other DEA Agents and Task Force Officers about this and other similar cases, and I have spoken with narcotics experts regarding methods of operation utilized by

subjects who distribute, manufacture, traffic and/or sell controlled substances. Furthermore, I receive training on a daily basis working on drug investigations for DEA in the Denver, Colorado Division Office. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

3.      Based on your affiant's training, experience, and investigations involving large amounts of cocaine, heroin, methamphetamine, and other controlled substances, your affiant knows that drug traffickers commonly use cellular telephones as their primary means of communication with sources of supply, customers, couriers, and coconspirators.  The cellular telephones used by drug traffickers contain contact information in the form of recent calls, missed calls, contacts, and telephone directories.  In addition, many current cellular telephones have text messaging and photograph capabilities.  This information often provides valuable evidence of drug traffickers' criminal associations and distribution activity.

4.      This application is submitted in reference to an investigation into heroin trafficking organization by the Enforcement Group 1 (EG1), a part of the Denver Field Division (DFD) of the DEA.  The investigation continues, but resulted in arrests and seizures of approximately 18lbs. of heroin on February 19, 2018.  In February 19, 2018, approximately 18lbs. of heroin was recovered, along with the seizure of $23,306USC, two firearms, and the arrest of Gilberto GUERRERO-FLORES and arrest of Jesus Antonio GARCIA-MARTINEZ in District of Colorado case number 18-mj-01025-MJW.  During the course of the investigation your affiant has obtained information from official law enforcement files, federal, state, and local law enforcement officers and agents, confidential informants, co-conspirators, surveillance activities,

public and private custodians of records (e.g., for telephone toll and subscriber records, and for public utility records), and other investigative techniques.  This affidavit is submitted in support of search warrant for a phone recovered from Jesus Antonio GARCIA-MARTINEZ, a defendant in 18-mj-01025-MJW. Jesus Antonio GARCIA-MARTINEZ, is charged with Knowingly possessing with intent to distribute one kilogram or more of a mixture and substance containing heroin and Conspiracy to Distribute more than one kilogram of heroin in case 18-mj-01025-MJW on or about February 19, 2018.  The prosecutors in 18-mj-01025-MJW asked the investigators to obtain search warrants for each available phone recovered on February 19, 2018.

5.      Your affiant believes that there is probable cause to search the SILVER LG SMARTPHONE (CELLPHONE) and the SILVER SAMSUNG GALAXY S8+, which was seized during the arrest of Jesus Antonio GARCIA-MARTINEZ, in the 453 BLOCK of Van Gordon Street in Lakewood, Colorado on or about February 19, 2018. Your affiant believes that the CELL PHONES could contain information or evidence of the following federal offenses: Title 21, United States Code, Section 841(a)(1), Distribution and Possession with Intent to Distribute Controlled Substances; Title 21, United States Code, Section 846, Conspiracy to Distribute and Possession with Intent to Distribute Controlled Substances; Title 21, United States Code, Section 843(b), Unlawful Use of a Communication Facility

## FACTS AND BACKGROUND OF THE INVESTIGATION

6.    The United States was investigating criminal activity involving drug trafficking and violations of Title 21, United States Code, Sections 841(a)(1), 846, and 959.

7.    On February 18, 2018, agents of the Salt Lake City, Utah District Office (DO) were contacted by Utah State Patrol and notified that they had seized a narcotics load, of

approximately 17 pounds of suspected heroin, which was to be transported from Ontario, California to Lakewood, Colorado.

8.     Special Agent (S/A) Aaron Raty of the Salt Lake City DO contacted your affiant and advised that the SOI transporting the heroin agreed to cooperate with investigators and conduct a controlled delivery under investigator's direction. The SOI provided a Colorado-based phone number for the receiver of the suspected heroin, who was only known to the SOI as "Lokochon.", who he/she contacts via TX:720-665-8078.

9.     Your affiant spoke with the SOI who advised he/she has transported approximately 25-30 loads of suspected narcotics from the Los Angeles Area to the Denver Metro Area in the past year and a half. Your affiant believes the information provided by the SOI is truthful, accurate, and does not conflict with any other information gained in the investigation.

10.    The SOI advised he/she is working for an individual in Mexico whose phone number was saved in the SOI's cellular telephone under the name "Livan." The SOI explained he/she receives instructions from "Livan" who coordinates the pick-up of narcotics between individuals in Los Angeles, California and the SOI. The SOI advised the final coordination and delivery of suspected narcotics is arranged with "Lokochon" in Colorado. The SOI advised that "Lokochon" has changed his Colorado address several times in the past. The SOI advised he/she delivers the narcotics to "Lokochon," who counts the packages, calls "Livan," confirms the right amount of packages/drugs are present, and then "Lokochon" pays the SOI for transporting the drugs.

11.    The SOI advised your affiant that he/she does not transport any narcotics proceeds back to Colorado. The SOI receives $1,500, which is wired from "Livan," to pay for costs associated with the SOI's transportation trip, and receives a final transport fee of $7,000.

12.     The SOI informed your affiant that his/her last trip was on February 14, 2018, and he/she

contacted "Lokochon" to coordinate the delivery of the suspected heroin, S/A Brandon Davis of

the Salt Lake City DO corroborated this information by examining calls placed from the SOI's

phone and confirming the SOI called "Lokochon" on February 14, 2018 at 8:06PM. The SOI

advised he last delivered a load of narcotics to 453 Van Gordon Street, Lakewood, Colorado on

the third floor, but was unsure of the unit number.

13.     With respect to the present shipment, the SOI told "Livan" that he/she is on the way to

Colorado, specifically to the Denver area, in order to deliver the suspected heroin.  "Livan"

believes the SOI will arrive in the afternoon hours of February 19, 2018.  "Livan" and the SOI

have exchanged text messages pertaining to the SOI's whereabouts. Your affiant anticipates

making a controlled delivery of the heroin to the "Lokochon" and that the controlled delivery

will be conducted during the afternoon hours of February 19, 2018.

14.     At approximately 3:00PM your affiant sprayed the twelve packages containing heroin with

luminescent spray, which becomes illuminated when exposed to black light. Your affiant then

placed the packages in a multicolored bag within the blue duffle bag.

15.     At approximately 3:45PM investigators gathered in the area of 453 Van Gordon Street

Lakewood, CO to establish surveillance.

16.     At approximately 4:30PM the SOI made contact who he/she believed to be "Lokochon"

and the subject who answered the phone, advised there was nobody home at the apartment and

that the occupant of the apartment was approximately 15mins away.

17.     At approximately 5:40PM, a subject who the SOI believed to be "Lokochon" advised the

SOI that the occupant of the apartment was going to be walking into his apartment shortly. Your

affiant at that time saw an unknown male entering the third floor apartment on the northeast side

of the building. Later identified as Gilberto GUERRERO-FLORES.

18.    At approximately 5:58PM, your affiant observed the SOI carrying the blue and black duffle

bag containing twelve tightly wrapped cylinder packages, previously placed in the duffle bag at

the DEA Denver Field Division by your affiant, enter 453 Van Gordon Street Building #5 Unit

#305, Lakewood, Colorado.

19.    During the time the SOI was in the apartment talking to GUERRERO-FLORES,

GUERRERO-FLORES advised the SOI that he only had half of the money and that the

individual with the other half of the money was on his way. GUERRERO-FLORES even

referenced that the other individual was "at the light", referring to the other individual being

close. GUERRERO-FLORES at one point looked out the window and told the SOI the other

individual had arrived.

20.    At approximately 6:15PM, S/A Nick Loonan observed a subject exit a white Ford Explorer

Colorado Registration #COB777. Your affiant then observed a male Hispanic walk up the

walkway and also enter 453 Van Gordon Street Building #5 Unit #305, Lakewood, Colorado.

Later identified as Jesus Antonio GARCIA-MARTINEZ.

21.    At approximately 6:20PM, your affiant observed the SOI exit Unit #305 and begin walking

down the stairs past your affiant. Your affiant grabbed the bag the SOI was carrying, which felt

empty at which point G/S Tom Miller took possession of the bag in the parking lot directly

outside and transferred possession of the bag to TFO Brian Jeffers.

22.    At approximately 6:22PM, members of the DEA Denver Field Division made entry into

453 Van Gordon Street Building #5 Unit #305, Lakewood, Colorado. S/A Jeffrey Baumert

advised he observed the several packages which he believed contained the delivered narcotics

from the SOI in the kitchen and several stacks of money in the bedroom, and the bedroom closet in plain view.

23.    Once the residence was secure and the two unknown male Hispanics were in custody, G/S Justin Dillard, exposed both males hands to blacklight.

24.    G/S Dillard advised Gilberto GUERRERO-FLORES hands illuminated instantly and were clearly covered with the illuminated substance and Jesus Antonio GARCIA-MARTINEZ had a small amount of illuminated substance on his hands.

25.    S/A Nick Loonan and Task Force Officer Brian Jeffers then interviewed the SOI, who advised he/she delivered the heroin to Apartment #305, which your affiant knows to be 453 Van Gordon Street, Lakewood, CO Building #5 Unit #305. The SOI related that the subject later identified as Gilberto GUERRERO-FLORES was initially the only subject in the apartment and that GUERRERO-FLORES told the SOI, that the other guy was coming with the other half of the money. The SOI advised GUERRERO-FLORES provided the SOI with $3,000USC. The SOI then said another subject, who investigators know to be, Jesus Antonio GARCIA-MARTINEZ, then came to the apartment and gave the SOI approximately $4,000USC. The SOI advised that both subjects began counting the packages and called someone confirming to the person on the phone that there were (12)Twelve packages. After the two subjects confirmed that all the packages were accounted for the SOI departed the apartment. The SOI said the payment for the delivery, which was approximately $7,000USC was inside of the bag, that G/S Tom Miller had taken.

26.    S/A Baumert advised your affiant that Gilberto GUERRERO-FLORES gave a post Miranda statement advising that he sells heroin as part of a larger organization. GUERRERO-FLORES also admitted that all of the currency in his bedroom, where large amounts of U.S.

currency were located, were proceeds from the sales of heroin and that he intended to send the

currency back to Mexico. GUERRERO-FLORES advised (6)six of the (12)twelve packages,

laying in plain view in the kitchen area, which he confirmed by pointing at, were intended for

him and the other (6) packages were intended for Jesus Antonio GARCIA-MARTINEZ.

GUERRERO-FLORES further advised S/A Baumert that he paid the person who delivery the

heroin, known as the SOI, $3,000USC and that Jesus Antonio GARCIA-MARTINEZ paid the

SOI $4,000USC. S/A Baumert also received consent, in writing, to search the BLACK I-PHONE

recovered from the residence, that Gilberto GUERRERO-FLORES admit was his phone.

27.    S/A Adam Allen and S/A Nick Loonan interviewed Jesus Antonio GARCIA-MARTINEZ

after reading his Miranda Rights. GARCIA-MARTINEZ advised S/A Allen and Loonan that he

has been in the U.S. for approximately 6 weeks and that he was in the U.S. to buy bicycles to

send back to Mexico. GARCIA-MARTINEZ admitted to picking up one of the packages of

heroin, but denied any involvement in narcotics trafficking.

28.    A search warrant was obtained and the apartment was searched. Inside of the apartment

your affiant also discovered: 785.2 additional grams of heroin that had a presumptive test

positive, an unknown amount of U.S currency, packaging materials consistent with the

distribution of narcotics, a Ruger AR-15 Rifle, and a Mossberg Shotgun. The Ruger AR-15 was

concealed inside of a flat-screen TV, in a broken down state, which was inside a box with

packaging apparently ready for transport. The Mossberg Shotgun was concealed inside of a

brand new air compressor, in a broken down state, which was also in a box apparently ready for

transport. Tools for the construction of the TV concealed compartment and Air Compressor

concealed compartment were also discovered such as: glue sticks, a glue gun, soldering gun,

soldering equipment, bondo, miscellaneous screws, and a grinder.

## SUMMARY

29.     As previously provided, your affiant knows, based on training and experience, that drug traffickers use cellular telephones as a primary means of communication.  In this particular investigation, cell phones were used to communicate with associates and the SOI to bring the approximately 17lbs. of heroin from Ontario, CA to Lakewood, CO.  Your affiant believes evidence of the drug distribution conspiracy involving Jesus Antonio GARCIA-MARTINEZ and others, possibly including contact names, text messages, and phone numbers consistent with the timeline of events and information provided by the SOI, will be contained in the stored data of the cell phones recovered from Jesus Antonio GARCIA-MARTINEZ in the 453 BLOCK of Van Gordon Street, Lakewood, CO.   DEA S/A Adam Allen placed Jesus Antonio GARCIA-MARTINEZ under arrest and placed the defendant's personal property, including two cell phones recovered from his person by S/A Allen, on kitchen floor of the apartment.   Your affiant recovered the two cell phones from the kitchen floor of the apartment and maintained care and custody of the two cell phones until the two cell phones were brought to DEA Headquarters, where the two cell phones were placed into DEA property as Exhibit N-10 with the Non-Drug Evidence Custodian as witnessed by your affiant. Your affiant believes a complete search of the data stored on the above listed cellular telephones, including, but not limited to, missed calls, contacts, recent calls, text messaging, and photographs, will provide evidence of the target DTO's criminal activity involving drug distribution.

30.     I, Christopher Hodorowicz, Special Agent, Drug Enforcement Administration,

Department of Justice, being duly sworn according to law, depose and say the facts stated in the

foregoing affidavit are true to the best of my knowledge, information and belief.

_s/Christopher Hodorowicz_
Christopher Hodrowicz
Special Agent, DEA

Submitted, attested to, and acknowledged by reliable electronic means this   7th   day of March 2018.

United States Magistrate Judge
DISTRICT OF COLORADO


**Application for search warrant was reviewed and is submitted by Guy Till, Assistant
United States Attorney.**